UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

BONCHON INTERNATIONAL, INC.,
BONCHON U.S.A., INC., and
BONCHON FRANCHISE LLC,

                Plaintiffs,

       v.

SAPPORO INC.; BC ALEXANDRIA INC.;
BON BURKE INC.; SUN M. AN; and
YONG C. HAM,
a/k/a RYAN HAM

              Defendants.

---------------------------------------------------------X

**COMPLAINT AND DEMAND**
**FOR JURY TRIAL**

      Plaintiffs Bonchon International, Inc., Bonchon U.S.A., Inc., and Bonchon Franchise LLC (collectively, "Bonchon" or "Plaintiffs"), by their attorneys Kaufmann Gildin & Robbins LLP, for their Complaint against Defendants Sapporo Inc.; BC Alexandria Inc.; Bon Burke Inc.; Sun M. An; and Yong C. Ham, a/k/a Ryan Ham (collectively, "Defendants") allege as follows:

## NATURE OF THE ACTION

      1.     This is a civil action seeking monetary damages and injunctive relief for trademark infringement, trade dress infringement, unfair competition, misappropriation of trade secrets, and breach of contract. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121; Section 1836(c) of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq.*; and Sections 1331, 1338(a), and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), and 1338(b). The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

      2.     Bonchon owns, operates, and licenses others to operate restaurants under the name BONCHON, which is Korean for "my hometown." Since its founding in South Korea in 2002 and the launch of its first restaurant in the United States in 2006, BONCHON has expanded

its reach, establishing franchise outposts in 24 states and the District of Columbia. This action arises out of malfeasance by Defendants, a former Bonchon franchisee.

3.    Bonchon entered four (4) franchise agreements (collectively, the "Franchise Agreements") with defendants Sapporo Inc., BC Alexandria Inc., Bon Burke Inc. and non-party Bon One, Inc. (all controlled by defendant Ryan Ham) to operate four (4) BONCHON restaurants in Herndon, Virginia; Alexandria, Virginia; Burke, Virginia; and Vienna, Virginia. As part of the agreements, Bonchon shared its proprietary "Bonchon System" for opening and operating restaurants with Defendants.  Bonchon also licensed to the entity Defendants the trademarks, service marks, trade dress and software included in Plaintiff's "Bonchon System."

4.    On September 15, 2022, Bonchon terminated the Franchise Agreements as a result of Defendant Ryan Ham's material breach thereof, effective October 17, 2022.  The effective date of termination was extended by Bonchon several times, at Defendants' request, to provide Defendants an opportunity to sell their franchised Bonchon restaurants.  However, no sale occurred, and the final effective date of termination was March 20, 2023.  As a result of the termination of the franchise agreements, Defendants lost all rights to use Bonchon's trademarks, trade dress, confidential information, know-how, and the Bonchon System. Defendants explicitly agreed not to use Bonchon's trademarks, trade dress, or confidential information and agreed not to use or disclose the trade secrets and confidential information obtained from Bonchon after the termination of the franchise agreements.

5.    Despite the renown of the BONCHON brand, despite having actual knowledge of Bonchon's rights therein by virtue their prior franchise relationship, and despite the express terms of the Franchise Agreements, Defendants have continued to operate a Korean fried chicken restaurant under the name "Bonchon" that makes unauthorized use of Bonchon's trademarks, trade dress, and trade secret recipes, to impermissibly create an association between Plaintiffs and Defendants in the minds of consumers. Accordingly, to protect the goodwill that Bonchon has established in the BONCHON trademarks and trade dress, to halt the misappropriation of its trade secrets, and to remedy Defendants' breach of the Franchise Agreements, Plaintiffs bring

this action for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); trade dress infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); misappropriation of trade secrets under the DTSA; and breach of contract under New York common law. As described below, Plaintiffs seek injunctive relief; an accounting of Defendants' profits flowing from its use of BONCHON trademarks, trade dress, and trade secrets; damages; attorneys' fees; and other such relief as the Court deems just and proper.

## THE PARTIES

6.      Plaintiff Bonchon International, Inc. is a corporation duly organized and existing under the laws of the Republic of Korea, with a primary place of business located at 48, Myeongnyesandan 2-Ro Jangan-Eup, Gijanggun Busan, Republic of Korea 619-951.

7.      Plaintiff Bonchon U.S.A., Inc. is a corporation duly organized and existing under the laws of the State of New York with a primary place of business located at 15660 Dallas Parkway, Suite 1150, Dallas, Texas 75248. Bonchon U.S.A., Inc. is a wholly owned subsidiary of Bonchon International, Inc. and operates BONCHON restaurants in the United States.

8.      Plaintiff Bonchon Franchise LLC is a limited liability company duly organized and existing under the laws of the State of New York, with its primary place of business located at 15660 Dallas Parkway, Suite 1150, Dallas, Texas 75248. Bonchon Franchise LLC is a wholly owned subsidiary of Bonchon U.S.A., Inc. and manages the franchising and licensing of BONCHON restaurants to third parties in the United States.

9.      Upon information and belief, defendant Sapporo Inc., is a corporation duly organized and existing under the laws of the State of Virginia, with a primary place of business located at 13320 Franklin Farm Road, Ste. E, Herndon, Virginia 20171.

10.      Upon information and belief, defendant BC Alexandria, Inc., is a corporation duly organized and existing under the laws of the State of Virginia, with a primary place of business located at 6870 Richmond Highway, Ste. 2, Alexandria, Virginia 22306.

11.     Upon information and belief, defendant Bon Burke, Inc., is a corporation duly organized and existing under the laws of the State of Virginia, with a primary place of business located at 8826 Sweet Gum Place, Springfield, Virginia 22153.

12.     Upon information and belief, defendant Sun M. An is an individual resident of Springfield, Virginia and an officer and shareholder of Sapporo Inc. and BC Alexandria Inc.

13.     Upon information and belief, defendant Young C. Ham a/k/a Ryan Ham ("Ryan Ham") is an individual resident of Springfield, Virginia and an officer and shareholder of Sapporo Inc.; BC Alexandria Inc.; and Bon Burke Inc.

## PERSONAL JURISDICTION & VENUE

14.     The Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and New York CPLR §301, because Defendants each agreed to submit to the exclusive jurisdiction and venue of this Court in the Franchise Agreements and Guarantees of Bonchon Franchise Agreement.

15.     Venue is proper in this District pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. §§ 1391(b) and (c), because the parties each agreed to venue any litigation arising from the Franchise Agreement and Guarantees of Bonchon Franchise Agreements exclusively in this District.

## FACTS COMMON TO ALL CLAIMS

**A.     Bonchon and Its BONCHON Chicken Restaurants**

16.     Founded by 2002 in South Korea by Jinduk Seo, BONCHON is a fast-casual dining restaurant known for Korean double-fried chicken, Asian fusion cuisine, and Korean specialties.

17.     BONCHON's signature fried chicken is hand-breaded, double-fried and served with proprietary sauces. Sauce is hand-brushed on every piece of chicken and made to order.

18.     Since 2006, when the first BONCHON location in the United States opened in Fort Lee, New Jersey, BONCHON has grown to over 100 locations throughout 24 states in the

United States, with 370 locations worldwide. BONCHON restaurants in the mid-Atlantic region of the United States include 17 locations in Virginia alone.

19.     Images of representative BONCHON locations and interiors are shown below:







20.     BONCHON is advertised in print media and on television, websites, and social media nationwide. Plaintiffs and their franchisees have spent millions of dollars on United States advertising and promotion for BONCHON restaurants since its domestic launch in 2006.

21.     BONCHON is regularly lauded for its fan-favorite chicken, pace-setting growth, and innovative business practices, with coverage in publications such as *Forbes*, the *Associated Press*, *Chicago Tribune*, *Yahoo!*, *MSN* and more. BONCHON was recognized by Business Insider as "the gold standard for fried chicken," beating five major restaurant brands for "best chicken wings." BONCHON was most recently included in *Nation's Restaurant News'* 2022 "Top 500 Restaurants," *Fast Casual Magazine*'s 2022 "Top 100 Movers & Shakers" and *Entrepreneur*'s 2023 "Franchise 500," "Top 10 Hot Franchise Trends," and "Top 12 Chicken Franchises to Buy" Lists. In addition to noting Bonchon's beloved recipes and impressive business success, food-focused publications such as *FSR Magazine* and *Eater* have praised the distinctive décor of BONCHON restaurants, commending their "clean lines, . . . simple color palette, curved details," and "soft colors and relaxed décor." Similarly, food critics at *The Washingtonian* have applauded Bonchon's "clean and contemporary" interior design, which

consists of "a deep color palette of rich reds to complement the wood planking that wraps the restaurant walls and ceiling," "communal tables beneath suspended lights," and "a separate bar area."

22.     Plaintiffs have generated substantial revenue from their BONCHON restaurants and achieved levels of growth in the restaurant business far outpacing the industry.

23.     As a result of Bonchon's reputation, use, substantial sales success, and significant investment in advertising, BONCHON has become a strong trademark identifying Plaintiffs exclusively. As such, the BONCHON mark represents enormous goodwill and is an extremely valuable asset to Plaintiffs.

**Bonchon's Trademark Registrations**

24.     Plaintiffs maintain several U.S. trademark registrations for BONCHON Design Marks, including the following:

25.     , U.S. Reg. No. 5596065, registered October 30, 2018, for "Printed matter, namely, paper and plastic bags for household use, cardboard and paper boxes, cardboard and plastic containers, paper napkins" in International Class 16; "Chicken, beef, pork, seafood, not live, fish cakes, eggs, vegetable salads, French fries, tofu, soy garlic-based spread, kimchi, onion rings" in International Class 29; "Franchise services, namely, offering business management assistance in the establishment and operation of restaurants" in International Class 35; and "Restaurant services, including sit-down service of food and beverages, food take-out and food delivery restaurant services" in International Class 43;

26.     , U.S. Reg. No. 6176828, registered October 13, 2020, for "Restaurant services, including sit-down service of food and beverages, food take-out restaurant services, and restaurants featuring food delivery" in International Class 43;

27.    , U.S. Reg. No. 6295809, registered March 16, 2021 for "Printed matter, namely, paper and plastic bags for household use, cardboard and paper boxes, cardboard containers, paper napkins" in International Class 16; "Chicken, beef, pork, seafood, not live, fish cakes, eggs, vegetable salads, French fries, tofu, soy garlic-based spread, kimchi, onion rings" in International Class 29; "Franchise services, namely, offering business management assistance in the establishment and operation of restaurants" in International Class 35; and "Restaurant services, including sit-down service of food and beverages, food take-out restaurant services, and restaurants featuring food delivery" in International Class 43;

28.    , U.S. Reg. No. 6322772, registered April 13, 2021 for "Restaurant services, including sit-down service of food and beverages, food take-out restaurant services, and restaurants featuring food delivery" in International Class 43;

29.    , U.S. Reg. No. 6343494, registered May 4, 2021 for "Chicken, beef, pork, seafood, not live, fish cakes, eggs, vegetable salads, French fries, tofu, soy garlic-based spread, kimchi, onion rings" in International Class 29 and "Restaurant services, including sit-down service of food and beverages, food take-out restaurant services, and restaurants featuring food delivery" in International Class 43; and

30.    , U.S. Reg. No. 6348858, registered May 11, 2021 for "Franchise services, namely, offering business management assistance in the establishment and operation of restaurants" in International Class 35 and May 24, 2016 for "Restaurant services, including sit-down service of food and beverages, food take-out restaurant services and restaurants featuring food delivery" in International Class 43.

31.     The above registrations (the "BONCHON Design Marks"), copies of which are attached as **Exhibit A** hereto, are valid, subsisting, and in full effect and serve as *prima facie* evidence of the validity of the BONCHON mark, pursuant to Section 33(a) of the Lanham Act, 15 U.S.C. § 1115(a).

32.     Bonchon has adopted a consistent combination and arrangement of design and other elements that Bonchon, through its interior design team and its franchisees, implements in BONCHON restaurants throughout the United States. Each BONCHON restaurant features an interior dining area in a black, white, grey, and red color palette with pendant lighting fixtures, wood wall tile, and a large grayscale cityscape spanning the interior wall. Each BONCHON restaurant features specific furniture, fixtures, equipment, and signs that are designed to distinguish BONCHON from other restaurants and that franchisees may purchase only from approved vendors. In keeping with Bonchon's design focus on natural materials, the menu covers display a wood pattern similar to that of the natural wood dining tables. The signage and menu items in BONCHON restaurants adhere to the same black, white, grey, and red color scheme and use only certain approved fonts prescribed by a Confidential Operating Manual. This combination of design elements (collectively, the "BONCHON Trade Dress") is not typically associated with Korean or fast-casual restaurants—instead, the intimate atmosphere and minimalist décor was cultivated to reflect Bonchon's modern approach to Korean fusion cuisine. Through BONCHON's regular implementation of these specific and cohesive design standards throughout its restaurants, consumers have come to associate the BONCHON Trade Dress with Bonchon exclusively.

33.     In addition to paying scrupulous attention to the contemporary industrial aesthetic of its restaurants, Bonchon takes great care to guard the confidentiality of its recipes. Bonchon has developed its recipes through decades of experimentation and substantial investment of talent and resources. Bonchon's recipes are the core of its business and are central to Bonchon's ability to surpass its competitors and set, as one publication quipped, the "gold standard for fried chicken." Bonchon's proprietary recipes are contained in a Confidential Recipe Manual and

access to the manual is restricted to Bonchon personnel and franchisees. To prevent unnecessary or unauthorized disclosure, Bonchon provides franchisees with only a single copy of the Manual and requires that franchisees agree not to divulge the recipes, not to use the recipes after the termination of the franchise agreement, and not to help any third party to obtain or reverse engineer the recipes.

**B.**     **The Franchise Agreements and Guarantees**

34.     On December 4, 2013, Sapporo Inc. entered into a written franchise agreement with Bonchon (the "Herndon Franchise Agreement") for the right and obligation to develop and operate a franchise Bonchon Restaurant located at 13320 Franklin Farm Road, Suite E, Herndon, Virginia 20171 (the "Herndon Restaurant"), which agreement was subsequently amended on August 19, 2022.

35.     On December 4, 2013, defendants Sun M. An and Ryan Ham executed a Guarantee of Bonchon Franchise Agreement pursuant to which each of them individually and severally absolutely and unconditionally guaranteed the payment of all amounts and the performance of all the covenants, terms, conditions, agreements, and undertakings contained and set forth in the Herndon Franchise Agreement.

36.     On December 2, 2015, BC Alexandria Inc. entered into a written franchise agreement with Bonchon (the "Alexandria Franchise Agreement") for the right and obligation to develop and operate a franchise Bonchon Restaurant located at 6870 Richmond Highway, Suite 2, Alexandria, Virginia 22306 (the "Alexandria Restaurant"), which agreement was subsequently amended on August 19, 2022.

37.     On December 2, 2015, defendants Sun M. An and Ryan Ham executed a Guarantee of Bonchon Franchise Agreement pursuant to which each of them individually and severally absolutely and unconditionally guaranteed the payment of all amounts and the performance of all the covenants, terms, conditions, agreements, and undertakings contained and set forth in the Alexandria Franchise Agreement.

38.     On September 18, 2020, Bon Burke Inc. entered into a written franchise agreement with Bonchon (the "Burke Franchise Agreement") for the right and obligation to obey a franchise Bonchon Restaurant located at 9536 Old Keene Mill Road, Burke, Virginia 22015 (the "Burke Restaurant"), which agreement was subsequently amended on August 17, 2021 and August 19, 2022.

39.     On September 18, 2020, defendant Ryan Ham executed a Guarantee of Bonchon Franchise Agreement pursuant to which he individually and severally absolutely and unconditionally guaranteed the payment of all amounts and the performance of all the covenants, terms, conditions, agreements, and undertakings contained and set forth in the Burke Franchise Agreement.

40.     On September 18, 2020, non-party Bon One Inc. entered into a Franchise Agreement with Bonchon (the "Vienna Franchise Agreement") for the right and obligation to open a franchised Bonchon Restaurant located at 8603 Westwood Center, No. 100, Vienna, Virginia 22182 (the "Vienna Restaurant"), which agreement was subsequently amended on August 17, 2021 and August 19, 2022.

41.     On September 18, 2020, defendant Ryan Ham executed a Guarantee of Bonchon Franchise Agreement pursuant to which he individually and severally absolutely and unconditionally guaranteed the payment of all amounts and the performance of all the covenants, terms, conditions, agreements, and undertakings contained and set forth in the Vienna Franchise Agreement.

C.      **Bonchon's Termination of the Franchise Agreements**

42.     In 2022, Bonchon learned that Ryan Ham (through his entity Cresco Capital, Inc., a Virginia corporation for which he serves as a director) was engaged in the operation of a "bbq Chicken Restaurant" in Falls Church, Virginia (the "Competitive Business") from the time it opened in 2017, in blatant violation of the noncompetition covenants set forth in Section 12.02 of each of the Franchise Agreements.

43.     As the signatory to the Franchise Agreements and Guarantor of the Franchise Agreements, Mr. Ham's agreement not to compete with Bonchon was integral to Bonchon's decision to enter into the Franchise Agreements.

44.     Consequently, by letter dated September 15, 2022 ("Notice of Termination"), Bonchon terminated the Franchise Agreements effective as of 12:01am October 17, 2022.

**D.     The Repeated Extensions of the Effective Date of Termination**

45.     Bonchon's Notice of Termination offered Defendants the opportunity to extend the effective date of termination of the Franchise Agreements for an additional thirty (30) days (i.e., November 16, 2022) to give Defendants an opportunity to sell their Restaurants.

46.     On October 14, 2022, Mr. Ham contacted Greg Buchanan, Bonchon's former Chief Administrator Officer, and requested a sixty (60) day extension of the termination effective date to find a qualified buyer of the Restaurants.  As an accommodation to Mr. Ham, Bonchon agreed and delivered a letter to Defendants, dated October 14, 2022 (the "Termination Extension Notice"), which extended the effective date of termination to December 1, 2022.

47.     On December 2, 2022, upon Mr. Ham's request, Bonchon delivered a further written notice to Defendants (the "Second Termination Extension Notice"), which extended the effective date of termination to January 2, 2023.

48.     On January 19, 2023, upon Mr. Ham's request, Bonchon delivered a further written notice to Defendants (the "Third Termination Extension Notice"), which extended the effective date of termination to January 30, 2023.

49.     In a Microsoft Teams meeting with Mr. Ham and representatives of Bonchon on January 27, 2023, Mr. Ham advised Bonchon that his Vienna Restaurant lease had been terminated.  As a result, the parties executed a Mutual Termination Agreement, pursuant to which non-party Bon One, Inc. and Mr. Ham agreed to terminate the Vienna Franchise Agreement.  The Vienna Restaurant was never built or operated.

50.     On January 28, 2023, upon Mr. Ham's request, Bonchon delivered to Defendants a further written (email) notice (the "Fourth Termination Extension Notice"), which extended the

effective date of termination for the Alexandria, Burke and Herndon Franchise Agreements to February 28, 2023.

51.     Despite Mr. Ham's repeated requests for extensions to enable him to sell the Restaurants, as of February 28, 2023, no sale had been effectuated.

52.     On March 16, 2023, Bonchon delivered to defendants a final notice of termination (the "Final Notice of Termination"), which further and finally extended the effective date of termination for the Alexandria, Burke and Herndon Franchise Agreements to March 20, 2023.

**E.     Defendants' Unlawful Continued Operation of Their Formerly Licensed Bonchon Restaurants**

53.     The Burke Restaurant was never fully constructed or opened to the public. However, it did have interior and exterior signage displaying the BONCHON trademarks installed.

54.     The Vienna Restaurant was never fully constructed or opened to the public.

55.     Defendants continued to operate the Alexandria and Herndon Restaurants as Bonchon Restaurants subsequent to the effective date of termination of the Alexandria and Herndon Franchise Agreements on March 20, 2023.

56.     On April 2, 2023, a Bonchon representative visited the Herndon Restaurant and the Alexandria Restaurant and confirmed that each of these Restaurants continued to operate using Bonchon's name, trademarks, and trade dress as if the termination never occurred.

57.     On April 18, 2023, a Bonchon representative again visited the Herndon Restaurant and confirmed that it continued to operate using Bonchon's name, trademarks, and trade dress as if the termination never occurred.

58.     Upon information and belief, the unfinished Burke Restaurant continues to display interior and exterior signage displaying the BONCHON trademarks.

59.     Defendants continue to use without authorization Bonchon's trademarks, name, and trade dress that characterize BONCHON Restaurants at the Herndon and Alexandria

Restaurants, despite the fact that they are no longer permitted to do so under the Franchise Agreements.

60.     In addition, Defendants have either continued to use (or, at the very least attempted to reverse engineer) Bonchon's trade secret recipes at the formerly licensed Bonchon Restaurants. The menu items and their apparent preparation, plating, and presentation offered by Defendants have remained unaltered since the termination of the Franchise Agreements. The offerings on the Bonchon menus at the formerly licensed Bonchon Restaurants are identical to Bonchon's own menu, including Bulldak, fried chicken, fried rice served with cucumber slices, pork buns served with exactly one cucumber slice, chicken katsu, bulgogi, and pickled radishes. Upon information and belief, Defendants continue to use Bonchon's trade secret recipes and confidential and proprietary information for their own benefit and for the benefit of their formerly licensed Bonchon Restaurants.

61.     The Final Notice of Termination included a demand to pay Bonchon its lost profits the amount of $202,852.46 on or before April 8, 2023 and to otherwise comply with the post-termination obligations set forth in the Franchise Agreements, including, by March 31, 2023, de-identifying the Alexandria Restaurant, Burke Restaurant and Herndon Restaurant and providing written and photographic evidence of such de-identification.

**F.     Harm Caused by Defendants' Wrongful Conduct**

62.     In continuing to use Bonchon's trademark and trade dress, Defendants sought to benefit from the recognition and goodwill of the BONCHON Design Marks and BONCHON Trade Dress and to create a false impression as to the source or sponsorship of Defendants' Restaurant, a particularly outrageous and willful act given that they previously had such a relationship and no longer do. The goodwill that Plaintiffs have built up in the BONCHON brand through years of substantial investment and effort is endangered by Defendants' misappropriation of the BONCHON Design Marks and BONCHON Trade Dress to promote its own Restaurants.

63.     As a result of Defendants' use of the BONCHON Design Marks and BONCHON Trade Dress, Plaintiffs are being irreparably harmed by the existence, marketing, promotion, and operation of Defendants' restaurants.

64.     Defendants' acts are likely to injure Plaintiffs' goodwill and reputation. The use by Defendants of BONCHON unfairly and unlawfully wrests from Bonchon control over its valuable trademarks and reputation. Bonchon has no control over the quality of Defendants' Restaurants.

65.     Defendants' possession and use of Bonchon's trade secret recipes diminishes the competitive advantage that Bonchon has in the restaurant industry.

66.     Thus, Defendants' unauthorized acts as described herein have caused and will continue to cause irreparable damage to Bonchon's business and goodwill unless restrained by this Court.

## Count I: Federal Trademark Infringement

### 15 U.S.C. § 1114(1)

67.     Bonchon repeats and realleges each and every allegation contained in paragraphs 1 through 66 above as if fully set forth herein.

68.     Defendants' advertising, promotion, and operation of restaurants using design marks identical or similar to the BONCHON Design Marks are likely to cause confusion, mistake, or deception as to the source or sponsorship of Plaintiffs' goods and services.

69.     As a result of Defendants' unauthorized use of Plaintiffs' federally registered BONCHON Design Marks, consumers are likely to believe that Defendants' restaurants have been approved by or are otherwise associated with Plaintiffs.

70.     Such use falsely represents Defendants as being legitimately connected with and/or authorized by Plaintiffs and places beyond Plaintiffs' control their own reputation and ability to control the use of the BONCHON Design Marks or the quality of the goods and services bearing those marks.

71.     Defendants' infringement of Bonchon's registered trademarks is willful, intended to reap the benefit of the goodwill of Plaintiffs, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

72.     Defendants' conduct has caused and is causing irreparable injury to Plaintiffs and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.

73.     Plaintiffs have no other adequate remedy at law.

## Count II: Federal Unfair Competition and False Designation of Origin

### Under 15 U.S.C. § 1125(a)(1)(A)

74.     Bonchon repeats and realleges each and every allegation contained in paragraphs 1 through 66 above as if fully set forth herein.

75.     Defendants have used in commerce, and continue to use in commerce, a trade dress that is virtually identical to Bonchon's distinctive and nonfunctional BONCHON Trade Dress and trademarks that are confusingly similar to the BONCHON Design Marks, constituting a false designation of origin, and which is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection or association of Defendants with Bonchon, or as to the origin, sponsorship, or approval of Defendants' services by Bonchon, in violation Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

76.     Defendants' acts as alleged herein were and are committed with the intent to confuse the public into thinking that there is an affiliate or association with, or a sponsorship or approval of, Defendants' restaurants by Bonchon. Defendants' acts of trade dress infringement have deceived customers and are likely to deceive a substantial segment of the consuming public, which is likely to influence purchasing decisions.

77.     Defendants' acts alleged herein were done with knowledge and in willful disregard of Bonchon's rights in the BONCHON Trade Dress and BONCHON Design Marks.

78.     Bonchon has suffered and continues to suffer injury as a direct and proximate result of Defendants' trade dress infringement in an amount of damages to be proven at trial. Moreover,

Defendants' acts alleged herein have irreparably harmed Bonchon and will continue to do so unless enjoined by this Court, as a result of which Bonchon is without an adequate remedy at law.

79.     Defendants' willful and intentional misconduct makes this an exceptional case, entitling Bonchon to recover attorneys' fees from Defendants pursuant to 15 U.S.C. § 1117.

### Count III: Misappropriation of Trade Secrets

### Under the Defend Trade Secrets Act, 18 U.S.C. § 1386 *et seq.*

80.     Bonchon repeats and realleges each and every allegation contained in paragraphs 1 through 66 above as if fully set forth herein.

81.     Bonchon owns and possesses trade secrets are set forth herein. These trade secrets include Bonchon's proprietary recipes for its menu items and sauces and are reflected in Bonchon's Confidential Recipe Manual, among other confidential company documents.

82.     Bonchon has developed its trade secret recipes over the course of decades, through a financial investment of millions of dollars, and through a substantial investment of time, talent, and other resources. Bonchon's trade secret recipes allow Bonchon to distinguish itself in the highly competitive restaurant industry.

83.     Bonchon's recipes are not generally known and cannot be readily ascertained by others. These trade secrets are a source of substantial economic value precisely because they are not known to the public or to Bonchon's competitors, who could obtain economic value or competitive advantage from these secrets.

84.     Bonchon implements extensive measures to protect and maintain the secrecy of its proprietary recipes. Bonchon's efforts include but are not limited to restricting physical and electronic access to the recipes to specified personnel, providing training and instruction on maintaining confidentiality of trade secrets, and requiring personnel and franchisees to sign nondisclosure agreements.

85.     Despite Bonchon's efforts to maintain the confidentiality of its trade secrets and Defendants' duty to maintain that confidentiality, Defendants are currently using Bonchon's

trade secrets for their own benefit in the development, operation, and design of their formerly licensed Bonchon Restaurants. Bonchon's trade secret recipes relate to food items that are used in, and intended for use in, interstate and foreign commerce within the meaning of 18 U.S.C. § 1836(b)(1).

86.     Defendants' acquisition and use of Bonchon's trade secrets has caused and will continue to cause great harm to Bonchon. This acquisition and use has given Defendants an unfair competitive advantage by enabling Defendants to: (1) forgo the investment of time, effort, talent, and other resources necessary to develop their own recipes; (2) more quickly design, develop, and offer restaurant services through the use of Bonchon's trade secrets; and (3) attract and retain customers who appreciate the taste and quality of Bonchon's trade secret recipes.

87.     As former franchisees, Defendants understood and appreciated the value of Bonchon's trade secrets and was aware of its obligation to maintain the confidentiality of these trade secrets. Accordingly, Defendants' misappropriation and use of Bonchon's trade secrets was willful and malicious.

88.     Because of Defendants' wrongful conduct, Defendants continue to possess Bonchon trade secrets. Unless the Court intervenes, Defendants' misappropriation will cause serious and irreparable harm to Bonchon's business.

89.     Because of Defendants' wrongful conduct, Bonchon has suffered actual damages in an amount to be proved at trial. Further, Defendants have been unjustly enriched by their wrongful conduct.

### Count IV: Breach of Contract: Franchise Agreement
### (Sapporo Inc. and BC Alexandria Inc.)

90.     Bonchon repeats and realleges each and every allegation contained in paragraphs 1 through 66 above as if fully set forth herein.

91.     Defendants Sapporo Inc. and BC Alexandria Inc. executed the Herndon and Alexandria Franchise Agreements, respectively.

92.     Pursuant to the Franchise Agreements, Sapporo Inc. and BC Alexandria Inc agreed not to use Bonchon's trademarks and system and to not use or disclose to anyone the trade secrets and confidential information that they obtained from Bonchon subsequent to the termination of the Franchise Agreements.

93.     In breach of the Franchise Agreement, Sapporo Inc. and BC Alexandria Inc. have used Bonchon's trademarks, trade dress, and trade secrets obtained from Bonchon to develop and operate a business in competition with Bonchon using Bonchon name, trademark and trade dress.

94.     Bonchon has performed all of its obligations under the Franchise Agreement, except those obligations that have been prevented or excused by Defendants' breach.

95.     Sapporo Inc. and BC Alexandria Inc.'s breach of contract will cause serious and irreparable harm to Bonchon's business. Because Bonchon has no adequate remedy at law for its injuries, Bonchon seeks permanent injunctive relief to cure such breach.

96.     As a result of Sapporo Inc. and BC Alexandria Inc.'s breach of the agreement, Bonchon has sustained and will continue to sustain damages in an amount to be proven at trial.

### Count V: Breach of Contract: Guarantees

### (Sun M. An; and Yong C. Ham, a/k/a Ryan Ham)

97.     Bonchon repeats and realleges each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

98.     Sun M. An and Ryan Ham executed two (2) Guarantees of Bonchon Franchise Agreement, pursuant to which each of them individually and severally absolutely and unconditionally guaranteed the payment of all amounts and the performance of all the covenants, terms, conditions, agreements, and undertakings contained and set forth in the Herndon and Alexandria Franchise Agreements.

99.     Pursuant to each of the Franchise Agreements, Sapporo Inc. and BC Alexandria Inc. each agreed not to use Bonchon's trademarks and system and to not use or disclose to

anyone the trade secrets and confidential information that the Franchisees obtained from Bonchon, subsequent to the termination of the Franchise Agreements.

100.    In breach of the Guarantees, Sun M. An and Ryan Ham have used, and permitted Sapporo Inc. and BC Alexandria Inc. to use, Bonchon's trademarks, trade dress, and trade secrets obtained from Bonchon to develop and operate a business in competition with Bonchon using Bonchon name, trademark and trade dress.

101.    Bonchon has performed all of its obligations under the Guarantees, except those obligations that have been prevented or excused by Defendants' breach.

102.    Sun M. An and Ryan Ham's breach of contract will cause serious and irreparable harm to Bonchon's business. Because Bonchon has no adequate remedy at law for its injuries, Bonchon seeks permanent injunctive relief to cure such breach.

103.    As a result of Sun M. An and Ryan Ham's breach of the agreement, Bonchon has sustained and will continue to sustain damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Bonchon requests judgment in its favor against Defendants as follows:

1.    Entering judgment for Bonchon on each of its claims;

2.    Enjoining Defendants, their agents, servants, employees, representatives, successors and assigns, and all persons, firms, and corporations acting in concert or in participation with them, from:

      a.   infringing the Bonchon Design Marks and Trade Dress;

      b.   falsely designating the origin, sponsorship, or affiliation of Defendants' business and services;

      c.   using the Bonchon Design Marks or any derivative or colorable imitation thereof, or any mark that is confusingly similar thereto, (collectively,

"Prohibited Marks"), in connection with the promotion, marketing, and offering of any goods or services;

d. seeking to register any of the Prohibited Marks, any derivation or colorable imitation thereof, or any mark that is confusingly similar thereto;

e. making or employing any other commercial use of the Prohibited Marks;

f. making any statement or displaying any representation that is likely to lead the public to believe that Defendants' services are in any way associated with, affiliated with, approved, endorsed, licensed, or authorized by, or otherwise connected with Bonchon;

g. using any false designation of origin or any other thing calculated to or likely to cause confusion or mistaken in the mind of the trade or public, or to deceive the trade or public into believing that Defendants' activities are in any way sponsored, licensed, endorsed, or authorized by, or affiliated or connected with Bonchon;

h. doing any other acts or things calculated to or likely to cause confusion or mistake in the minds of the public or to lead purchasers, consumers, or investors to believe that the services promoted or offered by Defendants emanate from or originate with Bonchon, or are somehow sponsored, licensed, endorsed, or authorized by or affiliated or connected with Bonchon; and

i. engaging in any other activity constituting unfair competition with Bonchon; and

j. further misappropriation or unauthorized use of Bonchon's trade secrets;

k. aiding, assisting, or abetting any other party in doing any act prohibited by sub-paragraphs (a) through (j) above.

3.      Awarding Bonchon such damages it has sustained by reason of Defendants' trademark infringement and unfair competition and directing that such sums be trebled pursuant to 15 U.S.C. § 1117;

4.      Seizing all Bonchon's trade secrets and confidential and proprietary technical or business information in the possession, custody, or control of Defendants in order to recover and protect such information, as permitted by 18 U.S.C. § 1836(b)(2);

5.      Awarding Bonchon damages for actual loss caused by Defendants' misappropriation of Bonchon's trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(B)(i)(I);

6.      Requiring Defendants to disgorge all profits unjustly obtained through the use of Bonchon's trade secrets and to pay those profits to Bonchon with interest, to the extent such unjust enrichment is not addressed in computing damages for actual loss, as permitted by 18 U.S.C. § 1836(b)(3)(B)(i)(II);

7.      Requiring Defendants to pay a reasonable royalty in an amount to be determined as compensation for Bonchon's injuries, to the extent Defendants are found to have caused harm for which neither actual damages nor unjust enrichment can be established, as permitted by 18 U.S.C. § 1836(b)(3)(B)(ii);

8.      Awarding Bonchon exemplary damages, including but not limited to double the amount of compensatory damages awarded on account of Defendants' intentional, willful, and malicious misappropriation of Bonchon's trade secrets, as permitted by 18 U.S.C § 1836(b)(3)(C);

9.      Awarding permanent injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A) to recover and protect its trade secrets from their ongoing misappropriation and use by Defendants;

10.     Requiring Defendants to pay Bonchon the compensatory damages to which it is entitled for breach of contract;

11.     Requiring Defendants to pay Bonchon's reasonable attorneys' fees, court costs, and expenses pursuant to 18 U.S.C. § 1836(b)(3)(D);

12.     Awarding to Bonchon all other and further relief to which it is entitled at law or in equity, as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs Bonchon International, Inc., Bonchon U.S.A., Inc., and Bonchon Franchise LLC respectfully request a trial by jury in this action.

DATED: April 24, 2023

Respectfully submitted,

_s/Kevin M. Shelley_

David J. Kaufmann
Kevin M. Shelley
Kaufmann Gildin & Robbins LLP
767 Third Avenue, 30th Floor
New York, New York  10017
Tel. (212) 755-3100
Fax. (212) 755-3174
dkaufmann@kaufmanngildin.com
kshelley@kaufmanngildin.com

*Attorneys for Plaintiffs*